**Norman SAAH, Jr., et al.**

v.

**CONTEL CORPORATION.**

Civ. No. Y–90–2073.

United States District Court,
D. Maryland.

Oct. 25, 1991.

Richard Murray, Washington, D.C., for plaintiffs.

Jeffrey P. Ayres, Eric Paltell, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Defendant filed a Motion for Summary Judgment and Plaintiffs filed a Cross Motion for Summary Judgment. After a consideration of the pleadings and evidence submitted, the Court finds that Plaintiffs

have failed to establish that Defendant's interpretation of its Group Medical Benefit Plan or that Defendant's application of the Plan's terms to Norman Saah, Jr. was an abuse of discretion. Accordingly, Defendant's Motion for Summary Judgment is granted and Plaintiff's Cross Motion for Summary Judgment is denied.

## Facts

Plaintiff Norman Saah, Sr. ("Saah") is a full-time, nonunion employee of the Contel Corporation ("Defendant"). As such, Saah is covered by Defendant's Group Medical Benefit Plan ("Plan"). Norman Saah, Jr. is Saah's 21-year-old son ("Son") who is also covered by the Plan.

In August of 1988, Son was involved in an automobile accident which left him in a coma for four weeks and caused some injury to his brain. After the accident, he spent six months at a medical rehabilitation center in Philadelphia, Pennsylvania. In January of 1990, Son was admitted to the Taylor Manor Hospital in Ellicott City. His treating psychiatrist at Taylor Manor, Dr. Billian, diagnosed him as suffering from Bipolar Disorder, Organic Mood Disorder and Poly Substance Abuse. Dr. Billian recommended that Son be transferred to the Health Care Rehabilitation Center in Austin, Texas ("Center") for treatment. In accordance with the requirements of the Plan, Plaintiffs requested pre-certification for the treatment.

Health International ("HI") is Defendant's "managed care" provider. (MSJ pp. 8, 11). HI is responsible for pre-certifying treatment and reviewing claims filed under the Plan. HI prospectively reviews proposed medical and psychiatric treatment of persons covered by the Plan. After evaluating the patient and reviewing the treatment, Health International advises Defendant if the treatment is medically or psychiatrically appropriate.

Health International conducted a pre-certification review of Son's case to determine whether the Plan would cover his transfer to and expenses at the Center. His case was reviewed by Marge Demaret, L.V.N. and Professional Service Coordinator for HI. After consultation with several independent psychiatrists and a representative from the Center, HI determined that Son would receive behavior modification and group therapy at the Center, and that such treatment is considered to be psychiatric. (MSJ, p. 10, 24). Accordingly, Health International recommended authorizing his transfer to the Center under a psychiatric diagnosis, "subject to further evaluation to determine whether he needed medical treatment, psychiatric treatment, or a combination thereof." (MSJ, p. 18).

Nurse Demaret informed the Center of HI's proposed recommendation. The Center rejected this offer and informed HI that it would not admit Son unless it was assured that the Plan's $100,000 limit on psychiatric care and substance abuse treatment would not apply to treatment he received at the Center. (MSJ, p. 19)

By letter dated May 30, 1990, Defendant advised Saah of the Plan's position with regard to the treatment proposed by the Center and Contel's decision to deny pre-certification. Saah appealed this determination, claiming that Son required long-term *medical* care at the Center. (Exh E, Attach 1). John Dawley, the Plan Administrator, denied the appeal.

By letter dated July 20, 1990, Mr. Dawley explained to the Plaintiffs that Defendant's decision was based upon a finding by Health International that Son would receive treatment that is both psychiatric and medical at the Center. (MSJ Exh C, Attach 2). Specifically, Health International found that Son would receive behavior modification and group therapy, both of which are psychiatric treatments. (*Id.*). He explained further that Health International denied pre-certification because "the [Center] would admit [Son] only if Health International would pre-certify that the Plan's $100,000 limitation for psychiatric or substance abuse care did not apply to the Center's treatment program." (*Id.*). He also explained that Health International was willing to pre-certify a treatment program for Son at the Center so long as any psychiatric or substance abuse care provided to Son by the Center was subject to the

Plan's $100,000 limitation. (*Id.;* MSJ, p. 29–30).

Defendant moves for summary judgment on grounds that its interpretation of the Plan was reasonable and supported by substantial evidence. Specifically, Defendant alleges that it routinely makes benefit determinations by focusing on the nature of the treatment to be received, not the condition of the recipient; and its finding that Son would receive psychiatric treatment subject to the Plan's coverage limitation was not unreasonable.

Plaintiff opposes Defendant's motion and moves for summary judgment on grounds that Defendant's decision to focus on the nature of the treatment as opposed to the condition being treated was an abuse of discretion. Plaintiff contends that Son's condition is medical and that any treatment he receives for his condition is also medical and not subject to the $100,000 limitation on psychiatric care.

### The Law

A. Summary Judgement

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The United States Supreme Court has interpreted this rule to mandate the entry of summary judgment after an adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. Review of Benefit Determination Under 29 U.S.C. § 1132(a)(1)(B).

Title 29 U.S.C. § 1132(a)(1)(B) permits recovery of benefits due under an employee welfare benefit plan:

A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

■ A denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *De Nobel v. Vitro Corporation,* 885 F.2d 1180 (4th Cir. 1989). If the Plan fiduciary has such authority, then review is limited to "abuse of discretion." *De Nobel,* at 1186 ("If the plan's fiduciaries are [ ] entitled to exercise discretion ..., reviewing courts may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse.").

■ The Plan at issue in this case borrows language from *Firestone:*

The Plan Administrator is Contel Corporation through its Vice President, Human Resources.... The Plan Administrator administers the Plan under contract with the Plan sponsors. *The Plan Administrator has discretionary authority to determine eligibility for benefits and to construe the terms of the Plan;* (Plaintiff's Exh. 1, p. 29). (Emphasis supplied). *See, Firestone,* at 115, 109 S.Ct. at 956.

■ Accordingly, Defendant's benefit determination must be reviewed under the abuse of discretion standard. Under the abuse of discretion standard, the Plan Administrator's interpretation of relevant provisions will not be disturbed if "reasonable." *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187 (4th Cir.1989) (citing *Firestone v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 954). The Court in *De Nobel* announced several rules to guide an analysis:

(1) Whether the administrators' interpretation is consistent with the goals of the plan;

(2) Whether the administrators' interpretation might render some language in the plan documents meaningless or internally inconsistent;

(3) Whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA;

(4) Whether the provisions at issue have been applied consistently; and

(5) Whether the fiduciaries' interpretation is "contrary to the clear language of the plan."

■ Ultimately, however, the Plan Administrator's interpretation is entitled to "considered deference." *Id.* at 1188. Review of the Plan Administrator's decision is limited to the record before the Plan Administrator at the time of his decision. *Steever v. Bristol–Myers Co.,* 727 F.Supp. 986, 989 (D.Md.1989). Where the Plan fiduciaries have offered a reasonable interpretation of disputed provisions, "courts may not replace [it] with an interpretation of their own,—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." *De Nobel, supra,* 885 F.2d at 1188. If the decision of the Administrator is supported by substantial evidence, there can be no abuse of discretion. *Steever v. Bristol–Myers Co., supra,* 727 F.Supp. at 989.

■ At trial, the plaintiff would have the burden of proving an abuse of discretion. *Questech, Inc. v. Harford Acc. & Indem. Co.,* 713 F.Supp. 956, 964 n. 20 (E.D.Va. 1989).

## Discussion

■ According to Defendant, the Plan distinguishes between limitations on coverage for psychiatric care and medical care. Each person covered by the Plan is allowed an individual lifetime maximum of $1,000,000 for medical care and $100,000 for psychiatric or substance abuse care.[1]

In response, Plaintiffs contend that the language of the Plan is ambiguous and internally inconsistent. Plaintiff cites page 16 of the Plan which provides "If you receive treatment *for a psychiatric condition* ... the Plan will pay benefits ... subject to pre-certification and the following limitations: ... [b]enefits for any psychiatric or substance abuse care are limited to a combined lifetime maximum of $100,000." Plaintiff contends that Norman, Jr.'s condition is "medical", not "psychiatric" and thus should not be subject to the psychiatric care limitation.

Defendant states that it routinely makes a distinction between types of treatment for purposes of coverage. Such a distinction is made, according to Defendant, to control the cost of providing benefits to Contel employees and their dependents. In support, Defendant offers the testimony of Dr. Donald K. Kelly, the Medical Director and Chief Executive Officer of Health International.

Dr. Kelly is responsible for making final recommendations concerning pre-certification and classification of treatment under Defendant's Health Benefit Plan. Dr. Kelly states that the distinction between psychiatric treatment and medical treatment is "well-recognized in the managed care and employee benefit industries." Psychiatric Treatment is an example of what is referred to in the industry as a "line item benefit." [2] (Exh H at ¶ 10). The more line item benefits that are included in the Plan, the higher the limitations on coverage for each such benefit, the greater the total cost of the benefit plan.

The ambiguous language highlighted by Plaintiff fails to prove that Defendant's focus on treatment as opposed to condition is unreasonable. The Plan Administrator is vested with discretionary authority to construe the terms of the Plan. Here, the

---

1. The maximum coverage amounts for psychiatric and substance abuse care are explained at pages 10, 16 and 20 of the Plan. At page 10, The Plan provides "benefits for psychiatric and substance abuse care are subject to a combined $100,000 lifetime individual maximum." Page 16 provides, "[i]f you receive treatment for a psychiatric condition ... the Plan will pay benefits ... subject to pre-certification and the following limitations: ... Benefits for any psychi-

atric or substance abuse care are limited to a combined lifetime maximum of $100,000." On Page 20, the Plan provides, "[p]sychiatric and substance abuse care have a combined lifetime maximum of $100,000...."

2. Other line item benefits include home health care, hospice treatment, drug expenses, and mammograms. (Exh H ¶ 10)

Plan fiduciaries have resolved the ambiguities in the plain language of the Plan in a way that is rational on its own merits and finds support in the express language of the Plan. *De Nobel, supra,* 885 F.2d at 1190.

Plaintiff has not shown that Defendant's interpretation of the psychiatric care limitation provisions is unreasonable. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *De Nobel v. Vitro Corporation,* 885 F.2d 1180 (4th Cir. 1989). Plaintiff alleges that records obtained from Defendant indicate that Defendant has interpreted the Plan inconsistently but produces no evidence in support of this allegation. Instead, Plaintiff directs the Court's attention to a Computer Record of notes prepared by Health International Service Coordinator, Marge Demaret, L.V.N. (Plaintiffs Exhibit 14). The notes indicate that on several occasions, Nurse Demaret attempted to determine whether Son's diagnosis was medical or psychiatric. Plaintiff suggests that if the only relevant question was the type of treatment to be administered, Health International would have had no reason to inquire into the diagnosis.

An inquiry into the diagnosis of a Plan Beneficiary, as Defendant alleges, is clearly consistent with the pre-certification procedure outlined at pages 8–11 of the Plan. Health International's primary role is to assure sound and appropriate care at reasonable costs. When a Plan beneficiary calls for pre-certification, the health care management coordinator is charged with "gather[ing] as much pertinent information as possible.... to determine if the admission is appropriate and, if so, the number of approved days that will be covered under the Plan." (CMSJ Exh. 1). An evaluation

of the diagnosis and the cause are necessary to determine what type of treatment is appropriate, and how that treatment may be provided cost effectively.

Plaintiff cites several cases as evidence that the condition, not the treatment should determine the coverage. In *Brewer v. Lincoln National Life Insurance Company,* 921 F.2d 150 (8th Cir.1990), the Eighth Circuit Court of Appeals considered whether a condition entitled "affective mood disorder" was a "mental illness" under the provisions of two separate health benefit plans. *Id.* at 155. Both plans limited coverage to $50,000 for hospital charges associated with "mental illnesses." The Eighth Circuit concluded that the ordinary meaning of "mental illness" would include "affective mood disorder," the organic component of the disorder not withstanding. *Id.* at 154.

*Brewer* is inapposite for two reasons. First, in *Brewer,* the court reviewed the plan fiduciary's determination *de novo.* The plan at issue in *Brewer* did not contain a provision giving deference to a plan fiduciaries interpretation of the plan's language. Thus, the court owed no deference to the plan fiduciaries construction of the plan's terms. Second, the health management plan in *Brewer,* clearly and by its own terms put a cap on coverage for "mental illnesses." [3] *Brewer* sheds no light on whether with language that is ambiguous, the Plan Administrator's practice of basing coverage on treatment, and not condition, is unreasonable.

Plaintiffs cite *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534 (9th Cir.1990), for the same proposition. In *Kunin,* the

---

**3.** Based on the record, there is little dispute that Norman Saah, Jr. suffers from organic personality disorder, that either resulted from, or was exacerbated by the automobile accident. Plaintiff maintains that the organic component makes his illness a medical condition.

In *Brewer,* the district court reviewed two plans, one that limited coverage for "mental illnesses ... or for psychiatric or psychoanalytic care," and one that limited coverage for "mental illnesses" only. Though reversed on appeal, the district court initially found that "affective personality disorder" was not a "mental illness"

because of its organic component. Nevertheless, the district court found that coverage was appropriately limited under the first plan which limited coverage for "psychiatric or psychoanalytic care." Essentially, the court held that a "medical condition" could indeed require psychiatric care, a position contrary to what Plaintiffs contend.

The court of appeals concluded that an illness with an organic component could indeed be classified as a psychiatric condition and require psychiatric treatment, again contrary to what Plaintiffs contend.

Ninth Circuit declined to apply the *Firestone* "abuse of discretion" standard, and reviewed the benefit determination under the now discarded arbitrary and capricious standard. The court found that the fiduciary's inadequate investigation did not provide a reasonable basis for making a determination that autism is a mental illness and was thus arbitrary and capricious. The court affirmed the district court's finding that autism is not a mental illness because, *inter alia*, "it cannot be treated by traditional methods of psychotherapy."[4]

As with *Brewer*, the court in *Kunin* appears to have been guided by clear, unambiguous language in the defendant's health management plan that limited coverage for the condition of "mental illness." The case does not compel a conclusion that focusing on "treatment" to determine coverage, where the language is ambiguous, is unreasonable.

■ Defendant's determination that Son would receive psychiatric treatment at the Center is supported by substantial evidence and will not be disturbed as an abuse of discretion. As part of the pre-certification procedure, Health International consulted Dr. Billian and learned that in her opinion, Son would need psychiatric therapy and behavior modification. Health International retained several independent psychiatrists—Dr. Haller, Dr. London, and Dr. Folstein—to evaluate Son. These psychiatrists confirmed Dr. Billian's conclusion that Son needed psychiatric treatment, including inpatient psychiatric care, group inpatient psychiatric care, and behavior modification. Health International contacted the Center, discussed potential treatment programs for Son with representatives of the Center, and evaluated the literature supplied to them by the Center.

Based upon their evaluation of this literature, Health International advised Defendant that Son would be receiving psychiatric treatment if he were placed in the Center.

There was some evidence that Son would receive a combination of medical and psychiatric care at the Center. Health International recommended that Son be certified for treatment so long as his psychiatric care would be subject to the coverage limitation. Any medical expenses would be covered under the medical provisions of the Plan. The Center refused to accept this arrangement and would not admit Son subject to the coverage limitation on psychiatric treatment. *Id.* In light of the Center's position on the issue, Defendant's decision to deny pre-certification to the Center for treatment was reasonable.

Finally, Plaintiffs contend that Health International is "financially motivated to deny pre-certification requests."[5] As proof of this allegation, Plaintiff submits the contract between Health International and Defendant. The contract contains a fee schedule indicating that Health International's fees will be increased by .25¢ per employee if Health International limits treatment authorizations to a level of less than 500 bed days per thousand employees.

Even under the deferential "abuse of discretion" standard of review, evidence of administrative bias remains relevant. " '[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor[ ] in determining whether there is an abuse of discretion.' " *De Nobel v. Vitro Corp, supra*, 885 F.2d at 1191 (citing *Firestone v. Bruch*, 109 S.Ct. at 956).

4. Relying on the testimony of two expert witnesses, the district court concluded that "mental illness is often thought of by the lay person as having nonphysical, psychological causes ... as opposed to an organic basis. Where dysfunctions of the brain derive from an identifiable organic basis, as in the case of brain cancer or Alzheimer's disease, the condition would not commonly be understood as mental illness." *Kunin v. Benefit Trust Life Insurance Company*, 696 F.Supp. 1342, 1347 (D.C.Cal.1988), aff'd and amended 910 F.2d 534 (9th Cir.1990).

5. Plaintiff's assertion that ambiguous terms should be construed in favor of the insured is without merit. *Firestone* abolishes the Rule of *Contra Proferentum* in ERISA cases. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *De Noble v. Vitro Corporation*, 885 F.2d 1180 (4th Cir.1989).

Defendant's reliance on *De Nobel* to demonstrate that there is no conflict of interest in this case is misplaced. In *De Nobel* the court found no conflict of interest where a plan fiduciary's benefit determination had a favorable impact on the balance of the trust itself. *De Nobel, supra,* 885 F.2d at 1191 ("That plan administrators' decisions have had a favorable impact on the balance sheet of the trust itself ... suggests no 'conflict of interest.' "). In this case, Health International, not the trust, would benefit from a denial of pre-certification for inpatient treatment at the Center. Health International cannot be considered impartial since they serve to gain by denying pre-certification in this case.

Though a conflict of interest may exist under the facts of this case, the Court is not persuaded that Defendant's benefit determination was unreasonable. Defendant's reasons for basing benefit determinations on the treatment received is rational on its own merits and is supported by the plain language of the Plan. *De Nobel, supra,* at 1190. Likewise, substantial evidence indicates that Son would receive psychiatric treatment (at least in part) at the Center. Defendant's decision to deny pre-certification for the treatment was reasonable in light of the Center's refusal to admit Son subject to the limitation for psychiatric care.