978 F.2d 1256
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Norman SAAH, Jr., by his next friend and legal guardian,
Anna Saah; Norman Saah, Sr., husband of Anna Saah and
father of Norman Saah, Jr.; Anna Saah, wife of Norman Saah
and mother of Norman Saah, Jr., Plaintiffs-Appellants,
v.
CONTEL CORPORATION, Defendant-Appellee.
 No. 92-1022.
 United States Court of Appeals, Fourth Circuit.
 Argued June 1, 1992.
Decided Oct. 19, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Joseph H. Young, Senior District Judge. (CA-90-2073-Y)
 ARGUED: Christian D. Abel, MURRAY & PRICE, Washington, D.C., for Appellants. Jeffrey Peabody Ayres, VENABLE, BAETJER & HOWARD, Baltimore, Maryland, for Appellee.
 ON BRIEF: Richard Murray, MURRAY & PRICE, Washington, D.C., for Appellants. Eric Paltell, Darryl Van Deusen, VENABLE, BAETJER & HOWARD, Baltimore, Maryland, for Appellee.
 D.Md., 780 F.Supp. 311.
 AFFIRMED.
 Before SPROUSE and HAMILTON, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Norman Saah, Sr. ("Saah") is an employee of Appellee Contel Corporation. He and his son, Norman Jr., are covered by Contel's Group Medical Benefit Plan ("Plan"). The Plan allows each beneficiary a lifetime maximum of $1,000,000 for medical care and $100,000 for psychiatric and/or substance abuse care. Together, Saah, his son Norman Jr., and his wife Anna sued Contel under the Employee's Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B) (1985) asserting that the health plan administrator abused his discretion by imposing a limit on psychiatric care benefits for Norman Jr.'s condition. The district court found that the administrator had not abused his discretion by determining benefits according to the type of treatment Norman Jr. received, regardless of the cause of his disorder. We agree and, therefore, affirm.
 
 I.
 
 2
 When Norman Jr. was 13, he began drinking beer, then progressed to LSD, PCP, crack, marijuana, and heroin. From age 15 until age 20, Norman Jr. was admitted to Montgomery General Hospital's Psychiatric Unit 10 to 15 times for depression and mood swings.
 
 
 3
 In August 1988, Norman Jr. was in a car accident that left him comatose for four weeks and caused brain injury. Thereafter, various medical rehabilitation centers treated him. He continued to have problems, and his mood swings worsened. He attempted suicide by drug overdose. In January 1990, Norman Jr. was admitted to a general psychiatric hospital, Taylor Manor, for most of the year. His treating psychiatrist, Dr. Virginia Billian, diagnosed him as suffering from dipolar disorder, organic mood disorder, and polysubstance abuse.
 
 
 4
 Dr. Billian recommended that Norman Jr. be transferred to the Health Care Rehabilitation Center in Austin, Texas ("Center") for treatment because it had an area for patients with head injuries concomitant with psychiatric problems, and because it was well-suited for polysubstance abusers. As required by the Plan, Saah requested precertification for the treatment (i.e., a prospective review of proposed treatment for Plan beneficiaries to determine if the treatment is appropriate).
 
 
 5
 Contel has contracted with Health International ("HI") to manage, review, and classify claims under its Plan. Marge Demaret, L.V.N. and Professional Service Coordinator specializing in psychiatric care issues for HI, conducted a precertification review of Norman Jr.'s case to determine whether the Plan would cover his transfer to and expenses at the Center. She consulted with Dr. Billian, three independent psychiatrists, and a representative from the Center, and she also reviewed the Center's literature. HI determined that Norman Jr. should receive inpatient psychiatric care, behavior modification, and group therapy at the Center, defining such treatment as psychiatric. Accordingly, HI authorized his transfer to the Center under a psychiatric diagnosis subject to further evaluation to determine whether he needed medical treatment, or combined therapy.
 
 
 6
 HI recommended precertification, as long as Norman Jr.'s psychiatric care was subject to the coverage limitation (any medical expenses still would be covered under the Plan's medical provisions). Jt.App. at 135-36. Demaret informed the Center of HI's recommendation. The Center refused this arrangement and would not admit Norman Jr. with a limitation on psychiatric coverage. Consequently, HI denied precertification. In turn, Contel advised Saah of its Administrator's decision to deny precertification. Saah appealed this determination, claiming that Norman Jr. required long-term medical care at the Center. John Dawley, the Plan Administrator, denied the appeal July 20, 1990. He explained that Norman Jr. would receive both psychiatric and medical care at the Center and that benefits for psychiatric care were limited to $100,000 regardless of the cause of the illness.
 
 
 7
 The Saahs argue that Norman Jr. suffers from organic personality disorder which either resulted from, or was exacerbated by, the automobile accident. The Saahs further maintain that the organic component makes his illness a medical, not psychiatric, condition. Thus, they contend that any treatment he receives for his condition is also medical and not subject to the $100,000 limitation on psychiatric care.
 
 II.
 
 8
 Review of a denial of employee welfare benefits under ERISA is de novo unless the benefit plan gives the administrator discretion to determine eligibility for benefits or to construe the terms of the plan. Because Contel's Plan provides for such administrative discretion, the Saahs must show procedural or substantive abuse in the exercise of this discretion in order to overturn the Plan Administrator's decision to deny benefits. De Nobel v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir.1989). Furthermore, a reviewing court must weigh evidence of administrative bias as a factor in determining whether an abuse of administrative discretion occurred. De Nobel, 885 F.2d at 1191.
 
 
 9
 The Saahs contend that HI is "financially motivated to deny precertification requests." As proof, they submitted the contract between HI and Contel. The contract contains a provision increasing HI's fees by $0.25/employee if HI limits treatment authorizations to fewer than 500 bed days/1,000 employees. In this instance, however, that provision alone would not support a finding of conflicting interests. Norman Jr. never left Taylor Manor Hospital throughout the precertification process. It would be entirely speculative to say that fewer bed days would have resulted at the Center if the primary care were classified as psychiatric instead of medical. In the first place, it could not be determined how long the treatment might take and, in the second, care of a medical nature would have been charged against the one million dollar medical care limit. Jt.App. at 135-36. Also, because the Plan is funded by a trust, benefit determinations "lend themselves less readily to the accusation of conflicting interests and are more easily justified." Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1567 (11th Cir.1990) (dicta), cert. denied, 111 S.Ct. 712 (1991); see also, Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir.1991) ("Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit making role as a business...."). The district court properly gave this factor slight weight in its review for abuse of discretion.
 
 
 10
 Under De Nobel, the administrator has abused his discretion if he interpreted plan provisions in a manner that:
 
 
 11
 (1) is inconsistent with the goals of the plan;
 
 
 12
 (2) renders some language in plan documents meaningless or internally inconsistent;
 
 
 13
 (3) is contrary to ERISA's procedural and substantive requirements;
 
 
 14
 (4) is inconsistent with past applications; and
 
 
 15
 (5) is contrary to the clear language of the plan.
 
 
 16
 De Nobel, 885 F.2d at 1188.
 
 
 17
 The Plan Administrator's interpretation is consistent with the goals of the plan, and therefore, his decision satisfies the first De Nobel requirement. Dr. Donald K. Kelly, the Medical Director and Chief Executive Officer of HI, is responsible for making final recommendations concerning precertification and treatment classifications under Contel's Plan. In his affidavit, Dr. Kelly explained that psychiatric treatment is a "line item benefit," as are home health care, hospice treatment, drug expenses, and mammograms. The more line item benefits in a plan, or the higher the coverage for each such benefit, the greater the total cost of the benefit plan. Jt.App. at 281. Distinguishing "line item benefits" like psychiatric care from medical treatment has the legitimate purpose of limiting health care costs and is consistent with the Plan's goals. Therefore, the administrator's decision to deny benefits in this case was consistent with the goals of the Plan.
 
 
 18
 The Plan Administrator's interpretation does not render some language in the plan documents meaningless or internally inconsistent and, therefore, passes the second prong of the De Nobel test. The Plan repeatedly refers to limited benefits for "psychiatric care." On the other hand, the phrase "psychiatric condition" appears only once in the Plan, as follows:
 
 
 19
 If you receive treatment for a psychiatric condition ... the Plan will pay benefits just as it would for any other illness, ... subject to precertification and the following limitations: Benefits for any psychiatric or substance abuse care are limited to a combined lifetime maximum of $100,000. (Emphasis added.)
 
 
 20
 Saah argues that Contel has misinterpreted the phrase "treatment for a psychiatric condition" to mean "psychiatric treatment for any condition." He contends that this construction either makes the Plan's language ambiguous or internally inconsistent. Here, the Plan Administrator's interpretation is reasonable. In this circuit the dispositive principle is whether the plan administrator has offered a reasonable interpretation of plan provisions. De Nobel, 885 F.2d at 1188 (plan administrator's interpretation is entitled to considered deference). Appellee's construction of the Plan provisions is rational, and his classification is supported by its plain language. De Nobel, 885 F.2d at 1190-91. Thus, the Plan Administrator's decision satisfies the second prong of De Nobel.
 
 
 21
 Furthermore, Contel's interpretation is not contrary to ERISA's procedural and substantive requirements, and thus complies with the third De Nobel requirement. ERISA requires that the plan administrator be reasonable in interpreting the plan and make decisions based upon substantial evidence. The decision to deny precertification for the treatment was reasonable considering the Center's refusal to admit Norman Jr. subject to the limitation for psychiatric care and/or substance abuse. Substantial evidence supports the Plan Administrator's determination that Norman Jr. should receive psychiatric treatment, at least partly, at the Center. HI thoroughly evaluated Norman Jr.'s case, consulting Norman Jr.'s primary psychiatrist and three independent psychiatrists, as well as reviewing the Center's programs. Cf. Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir.1988), cert. denied, 111 S.Ct. 581 (1990) (determination that autism was within policy limitation on "mental illness" was arbitrary and capricious; perfunctory investigation did not provide reasonable basis for such classification). Thus, Contel's interpretation is not contrary to ERISA's procedural and substantive requirements.
 
 
 22
 The Plan Administrator's interpretation is also consistent with past applications, thus satisfying De Nobel's fourth requirement. Appellants allege that notes in Demaret's Computer Record indicate that Contel has interpreted the Plan inconsistently. The notes reveal that Demaret attempted to determine several times whether Norman Jr.'s diagnosis was medical or psychiatric. The Saahs suggest that if the focus were on the proposed treatment, HI would not need to inquire into the diagnosis. An inquiry into the diagnosis of a Plan beneficiary is consistent, however, with the precertification procedure outlined in the Plan. HI's primary role is to assure sound, appropriate care at reasonable costs. Evaluating the diagnosis and its cause shapes the appropriate treatment and aids cost-effectiveness. Therefore, Contel's interpretation is consistent with past applications.
 
 
 23
 Finally, meeting the fifth prong of the De Nobel test, the Plan Administrator's interpretation is not contrary to the clear language of the Plan, which repeatedly limits benefits for psychiatric "care" to a $100,000 lifetime maximum for each individual covered. See Brewer v. Lincoln Nat. Life Ins. Co., 921 F.2d 150, 154 (8th Cir.1990), cert. denied, 111 S.Ct. 2872 (1991) (federal common law under 29 U.S.C. § 1132 requires that terms be accorded ordinary, not specialized, meaning; thus, "affective mood disorder" was "mental illness" because layperson would characterize symptoms of depression, mood swings, and unusual behavior as mental illnesses regardless of their cause); McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1202 (10th Cir.1992) (plan provisions regarding long-term care of head injury resulting in decreased cognitive functioning would be given the common and ordinary meaning that a reasonable plan participant would have applied). The common and ordinary meaning of the phrase "psychiatric condition" would certainly include Norman Jr.'s illnesses and, therefore, the Plan Administrator's interpretation is not contrary to the clear language of the Plan.
 
 III.
 
 24
 The Saahs have not shown that the Administrator's interpretation of the health care plan was an abuse of discretion. The holding of the district court is affirmed.
 
 
 25
 AFFIRMED.