Frank H. CASE, III, Plaintiff,

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

No. 02–CV–1081.

United States District Court,
E.D. Virginia.
Alexandria Division.

Oct. 31, 2003.

Benjamin Weaver Glass, III, Benjamin W. Glass, III & Associates, Fairfax, VA, for Plaintiff.

Steven H. Theisen, Theisen & Lingle PC, Richmond, VA, for Defendant.

### MEMORANDUM ORDER

LEE, District Judge.

THIS Matter is before the Court on Plaintiff's Motion for Judgment Based on the Administrative Record. This case involves an attorney's claim for long term disability benefits based upon deteriorating physical and mental health, brought on by depression, diabetes, and other serious medical conditions. The attorney's physicians concur that the attorney is unable to work as a practicing attorney. The Defendant insurance carrier rejected the attor-

ney's physician's reports, and without performing any medical tests, concluded that the attorney is capable of working, and ultimately denied his claim. The issue before the Court is whether the Defendant insurance carrier, Continental Casualty Company, ("Continental"), abused its discretion by improperly rejecting the claim by Plaintiff Frank Case ("Case" or "Mr. Case") for long-term disability benefits under ERISA, where he has presented substantial evidence of disability. The Court concludes that the insurance carrier abused its discretion in denying the motion and remands the case to the carrier for payment of long-term benefits.

Plaintiff espouses three arguments in support of his Motion for Judgment on the Administrative Record. First, Case argues that Continental's decision to deny benefits should be entitled to "little or no deference" because the Court cannot be required to give deference to the plan administrator, who has a conflict of interest as a party in this case and as the fiduciary of plan members. Second, Plaintiff argues that the administrative record does not support Continental's decision to deny Plaintiff's benefits; "[t]here is no evidence in the administrative record that Frank Case can work." Third, Plaintiff argues that because he supplied all of the items required to show proof of loss, as required by the terms of Plaintiff's disability insurance plan, Defendant cannot now deny benefits, claiming that what Plaintiff supplied was "not enough." Defendant proffers the following arguments to counter Plaintiff's assertions.

First, Continental argues that Case retains the "functional and mental capabilities of performing [his] occupational duties." (Def.'s Br. Opp. Pl.'s Claim for Benefits at 9.) Second, Defendant maintains that "[t]here is no evidence currently in the file in support of a position that [Case is] physically or mentally impaired to any degree that would prevent [him] from continuously working as an attorney...." (*Id.*) Third, Defendant contends that "the [evidence] submitted by the plaintiff did not comply" with the qualitative standards required to demonstrate disability. (*Id.* at 11.) Lastly, according to Continental, the evidence that Case submitted was inconsistent in nature, therefore, Defendant maintains that "the evidence was insufficient to establish disability in accordance with the terms of the plan." (*Id.* at 14.)

After carefully reviewing the parties' submissions and the Administrative Record, the Court holds that the Defendant abused its discretion in denying benefits because Plaintiff's evidence of his medical disability is substantial and largely uncontradicted. Accordingly, the Court holds that Judgment shall be entered in favor of the Plaintiff and against the Defendant.

## I. BACKGROUND

### A. Terms of Plaintiff's Insurance Policy

The insurance plan at issue states that a person is disabled if " 'injury or sickness causes physical or mental impairment to such a degree of severity' that a member is 'continuously unable to perform the material and substantial duties' of his or her regular occupation and is not working for wages in any occupation for which he becomes 'qualified by education, training or experience.' " (Def.'s Br. Opp. Pl.'s Claim for Disability Benefits at 5.) "Material and substantial duties" are defined by the plan as those "necessary functions of your regular occupation which cannot be reasonably omitted or altered." (*Id.*) The plan limits benefits for a mental disability, of any type, to 24 months of coverage. (*Id.*)

In order to receive disability benefits, the plan requires the claimant to submit

the following information: (1) date disability began; (2) cause of disability; (3) prognosis; (4) proof that claimant is receiving appropriate and regular care for his condition from a doctor whose specialty ... is the most appropriate for the claimed disabling condition; (5) objective medical findings that support the disability; [objective medical findings, include, but are not limited to, tests, procedures, or clinical examinations standardly accepted in the practice of medicine for the disabling condition]; and (6) extent of disability, including restrictions and limitations that prevent the claimant from performing his regular occupation. When filing a claim, the insurance contract states that the Plan Administrator has "discretionary authority to determine [claimant's] benefits and to interpret the terms and provisions of the policy." (*Id.* at 6.) The policy states that when Continental has "all necessary substantiating documentation ... [the claimant's] benefit will be paid on a monthly basis as long as you continue to qualify for it." (Pl.'s Mem. Supp. Mot. J. at 7.)

## B. Plaintiff's Background

Plaintiff has been an attorney for more than 30 years, and he was employed by the law firm Schmeltzer, Aptaker & Shepard, PC, in Washington, DC. While employed at his firm, Case had a long term disability policy issued by the Defendant. Case was the managing partner of the firm's Health Care section, he had five attorneys reporting directly to him, he traveled approximately 8 to 10 days per month, and his job required him to work 1,800 hours per year. (Pl.'s Mem. Supp. Mot. J. at 10.) Case was also responsible for "the development of clients, the management of the department, and the provision of legal services. (AR 26.) He was required to develop 90% of the business for the department. His substantial and material duties included drafting and editing documents and managing a staff. (AR 28A)." (*Id.* at 12.)

## C. Plaintiff's Symptoms

According to Plaintiff, his stress began to increase in 1999, and Dr. Ronald Weiner, a psychologist, recommended that Dr. Richard Greenberg, a psychiatrist, treat Mr. Case. "In early 2000, Mr. Case began to develop a number of physical problems," including "severe headaches, occasional dizziness, blurred [vision], numbness in the feet, tingling in the hands, night sweats, extreme thirst, an inability to control his bladder function, and sudden weight loss of 35 pounds." (*Id.* at 12–13.) Additionally, Plaintiff had a chronic knee problem which required knee replacement surgery, but leading up to his surgery, Case was also diagnosed with diabetes. "After the end of June 2000, Mr. Case very rarely appeared at the office. His work projects were delayed or taken over by other attorneys." (*Id.*)

Dr. Weiner submitted a "physician's statement" form to Plaintiff's insurance carrier, listing the following as Plaintiff's diagnoses: "adjustment disorder with mixed anxiety and depressed mood complicated by Type II diabetes." (*Id.*) Dr. Weiner also stated that Mr. Case was "unable to work." (*Id.*) More importantly, Dr. Weiner advised Case to stop working as of August 31, 2000, and that his "prognosis for returning to work was poor." (*Id.* at 14.) Dr. Beth Horowitz, M.D., also submitted a report to Plaintiff's insurance company, which stated that Case's "diagnoses were uncontrolled diabetes, hypertension, and hyperlipoidemia." (*Id.*) Dr. Horowitz also informed Continental that she did not "anticipate the patient [would] be able to return to work as a practicing attorney. (AR 31–2)." (*Id.*) In response to a letter by the Defendant. Dr. Horowitz also informed the Defendant that "the

primary diagnosis preventing Mr. Case from working as of July 1, 2000, was depression, and that this was the same reason he was not working as of July 18, 2001. (AR 114)" (*Id.*)

Mr. Case finally had his knee replaced in November 2000, after postponing it for quite some time. Plaintiff tried to return to work approximately four weeks after his surgery, but he only "lasted one hour. After that, he found that he could not get into the office until noon because of depression and an inability to function." (*Id.* at 15.) By a letter, dated August 1, 2001, Dr. Weiner told Continental that Plaintiff's "prognosis was poor for return to work and that during his last therapy session with him (May 31, 2001), Mr. Case was demoralized and not working due to the symptoms that included depression, anxiety, chronic worry and fears, procrastination, difficulty concentrating and mental/cogitative confusion." (*Id.* at 16.)

### D. Initial Denial of Benefits

Plaintiff wrote to Defendant Continental on March 28, 2001, wherein he provided his "notice of disability." In his notice of disability, Case stated that the cause of his disability was "the discovery of Type 2 diabetes on May 23, 2000 ... as well as knee replacement surgery." (Def.'s Br. Opp. Pl.'s Claim for Disability Benefits at 5.) Continental denied Plaintiff's request for disability benefits on August 10, 2001. In Continental's denial letter, it claimed to have reviewed records from Drs. Greenberg and Weiner and "the plaintiff's history of treatment for mental and emotional conditions." (*Id.* at 9.) The denial letter stated, in part, as follows:

> After reviewing the evidence submitted, CNA informed the plaintiff that 'it is our determination that [Case] retain[s] the functional and mental capabilities of performing [his] occupational duties. There is no evidence currently in the file in support of a position that you are physi-

cally or mentally impaired to any degree that would prevent you from continuously working as an attorney through the elimination period to the present time. Because of this, your request for benefit consideration is denied for your loss of 7/1/00. (AR 000053).'

(*Id.*)

### E. Plaintiff's Appeal of Defendant's Initial Denial of Benefits

On October 5, 2001, Plaintiff requested that Continental reconsider its position regarding Defendant's denial of long-term disability benefits to Plaintiff. Nonetheless, Continental again denied Plaintiff's claim on October 15, 2001. (Pl.'s Mem. Supp. Mot. J. at 9.) According to Plaintiff, the "denial letter contained absolutely no discussion of the merits of the claim and merely stated that the additional information submitted did not 'alter our prior decision.'" (*Id.*) On October 29, 2001, Case supplied the Defendant with additional information, but his claim was again summarily denied on November 7, 2001. Continental then referred the request to the Appeals Committee, and on December 14, 2001, the Committee advised Plaintiff that it was denying his claim. A relevant portion of the denial letter stated as follows:

> while Mr. Case may have had periodic bouts of depression and procrastination, the information speaks to the fact that Mr. Case's condition improved.... Therefore, after reviewing Mr. Case's entire claim file and all information provided, the evidence does not support a mental or physical functional impairment that would preclude him from performing his occupation as a Health Care Attorney.

(*Id.* at 9.)

### II. STANDARD OF REVIEW

A court must review a denial of benefits challenged under § 29 U.S.C.

1132(a)(1)(B) *de novo* unless the benefit plan gives the fiduciary discretionary authority to determine eligibility for benefits. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the fiduciary has discretion to decide eligibility, then the Court must review the decision for an abuse of discretion and the administrator's interpretation of the plan will not be disturbed as long as the fiduciary's decision is reasonable. *See Booth v. Wal–Mart Stores, Inc.*, 201 F.3d 335, 341–42 (4th Cir.2000). If the fiduciary had some financial interest in the outcome of the decision, then the abuse of discretion standard is lessened "to the extent necessary to counteract any influence unduly resulting from the conflict." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997). Ultimately, the Court should review the decision of a fiduciary acting under a conflict of interest to determine whether a fiduciary, acting free from a conflict, would have been reasonable in making the same decision. *See Myers v. Hercules, Inc.*, 253 F.3d 761, 766 (4th Cir.2001).

■ In determining whether a fiduciary's exercise of discretion is reasonable, the Court should consider numerous factors including: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *See Booth*, 201 F.3d at 342. The burden is on the plaintiff to demonstrate that the fidu-

ciary's decision was unreasonable. *See Saah v. Contel Corp.*, 780 F.Supp. 311, 315 (D.Md.1991), aff'd, 978 F.2d 1256, 1992 WL 310225 (4th Cir.1992). Accordingly, Plaintiff must demonstrate that Continental's decision was unreasonable in order to be awarded judgment based upon the administrative record.

## III. DISCUSSION

■ Continental abused its discretion because its denial of benefits was unreasonable. Continental's unreasonableness in denying Mr. Case long term disability benefits is exhibited through (1) Continental's expectations in light of the language of the plan, (2) the materials used to support Continental's decision, and (3) the unreasoned, unprincipled, and interested manner in which Continental rendered its decision.

### A. The Language of the Plan

The language of the plan does not support Continental's denial of benefits. The plan at issue states that a disability is "an injury or sickness" that "causes physical or mental impairment to such a degree of severity that you are (1) continuously unable to perform the material and substantial duties of your regular occupation; and (2) not working for wages in any occupation for which you are or become qualified by education, training or experience." (Pl.'s Mem. Supp. Mot. J. at 5 (quoting Insurance Plan in Administrative Record ("AR") at 6–20).) "Material and substantial duties" are defined as those "necessary functions of your regular occupation which cannot be reasonably omitted or altered." (*Id.*) The plan further states that an employee will be considered disabled if that person is "unable to earn more than 80% of your monthly earnings in any occupation for which you are qualified by education, training or experience." (*Id.*) The

plan limits benefits to 24 months for a disability due to a mental disorder of any type.

As previously stated, one seeking to receive disability benefits must submit, to the insurance company, several required items as proof of disability including, but not limited to, the cause of disability, prognosis, and proof that the person is receiving care for the disability. A plain reading of the language of the plan suggests that in order to recover benefits, it is necessary to show that Plaintiff (a) was unable to perform the duties of his occupation, (b) does not work, (c) sought medical treatment, and (d) did in fact receive treatment for his condition.

Continental repeatedly asserts that Plaintiff Case retained "the functional and mental capabilities of performing [his] occupational duties." (Def.'s Br. Opp'n. at 9.) Continental further states that Case's file contains "no evidence . . . in support of a position that [Case is] physically or mentally impaired to any degree that would prevent [him] from continuously working as an attorney. . . ." (Id.) As described above, Case's responsibilities as a partner in the health care division of his firm included directly supervising five attorneys, traveling up to 10 times a month, working 1800 hours per year, developing 90% of the business for his department, drafting and editing documents and managing a staff.

Dr. Weiner, one of Case's treating physicians, "submitted a 'physician's statement' on a form that [Continental] supplied" in which he diagnosed Case with adjustment disorder "with mixed anxiety and depressed mood complicated by Type II diabetes." (Pl.'s Mem. Supp. at 13.) Dr. Weiner also stated on that form that Case's symptoms "limited [his] ability from performing his job as a trial attorney" and concluded that Case was "unable to work." (Id.) Dr. Weiner suggested that Case stop working as of August 31, 2000. Dr. Horo-

witz, another treating physician, also submitted a form to Continental, wherein she advised Case to stop working in July 2000. (Id. at 14.) Further, Dr. Horowitz told Continental that she did not "anticipate the patient will be able to return to work as a practicing attorney." (Id.) Moreover, after Case finally had his knee replaced in November 2000, he was unable to go into the office, four weeks after the surgery, for more than one hour at a time. Eventually, Case was not able to get to the office before noon, "because of depression and an inability to function." (Id.)

Case submitted all of the required documents, proving his disabled condition, he stopped working and was receiving treatment from his physician in compliance with the plan's requirements. The outcome supports the conclusion that Continental's decision was unreasonable.

### B. Materials Analyzed in Support of Continental's Decision

The materials taken into consideration by Continental regarding Plaintiff's claim were more than adequate to support a decision to award Case benefits. However, Continental argues that the reports submitted by Drs. Weiner and Horowitz "clearly speak of plaintiff's improved condition, notwithstanding their later statements that the plaintiff was disabled." (Def.'s Br. Opp'n at 10.) In light of the prognosis and diagnosis that Case received from both physicians, it is clear that Continental's assessment is questionable.

First, the objective evidence shows that Case was "not working due to the symptoms that included depression, anxiety, chronic worry and fears, procrastination, difficulty concentrating and mental/cogitative confusion." (Pl.'s Mem. Supp. J. at 16 (quoting Aug. 1, 2001 letter from Dr. Weiner).) Furthermore, Case's "physical condition of hypertension, elevated blood

sugar, elevated cholesterol, blurred vision, peripheral neuropathy of the feet and hands, headaches and night sweats prevented him from working" from July through October 2000. (*Id.* (quoting Oct. 4, 2002 letter from Dr. Horowitz).) Yet Continental looked at selective statements from the patient, wherein he stated that he "was doing better" or that he "had developed an effective compromise with the managing partner" (Def.'s Br. Opp'n at 10), to support its decision to deny benefits to Case. However, the cumulative data supplied from the doctors points to the opposite conclusion, that Case was disabled, and according to the plan, the plan administrators are supposed to consider the objective medical evidence, not the words of the employee himself. Continental never relies on the official report of either of the physicians, which supports awarding Case disability benefits; instead Continental conveniently relies on parsed statements from the doctors, and vague information from an undisclosed Continental nurse, who conducted a review of Case's material, to support its decision to deny benefits to Case. Such conclusions, especially in light of recent submissions by both of Plaintiff's doctors that attest to his continued disability, are more than sufficient for a fiduciary to reasonable rely upon in awarding a claimant long-term disability benefits. The documents speak for themselves, and a reasonable disinterested fiduciary would not have denied Case benefits. Ultimately, the materials Continental relies upon are inadequate for a reasonable fiduciary to base its decision upon to deny long term disability benefits.

## C. Reasoned and Principled Decision/Fiduciary Conflict of Interest

Continental's decision to deny benefits was not the result of a reasoned and principled decision making process. Continental did not follow any clear policy or procedure in making its determination to deny

benefits. *See generally Booth,* 201 F.3d at 344 (acknowledging that a plan administrator could conceivably act unreasonably by following a policy that dictated a result contrary to the evidence). Continental's choices of who and what to believe appeared to be motivated by its interest in avoiding paying Mr. Case long-term benefits. For example, Continental was extremely comfortable in relying upon the statements of Case, who occasionally said that he was feeling better, even though his performance and appearance at work indicated otherwise.

Continental was unwilling to give credence to the unquestioned medical opinions of each of Case's doctors, who both stated that he was unable to return to work as an attorney, due to multiple physical and mental disabilities. Moreover, Continental conveniently discounted the reports of the physicians, by calling them "internally inconsistent." (Def.'s Br. Opp'n at 13.) However, what is inconsistent is that Continental chose not to believe the opinions of Plaintiff's treating physicians, by summarily dismissing these doctor's reports, yet Defendant chose to rely upon the professional assessment of Doris Gloss, a registered nurse and "member of the appeals committee," for the determination that Mr. Case's was not disabled according to the terms of the insurance plan. Conveniently, Continental fails to disclose Ms. Gloss' qualifications and the role that she played in the decision making process. A disinterested decision maker would not completely discount the opinions of two treating physicians in such a manner. Rather, a rational fiduciary, acting without a conflict of interest, would have at least sought an insurance company physical and mental examination of the claimant to compare with the claimant's medical reports. A review of the record reveals that the process by which Continental reached its decision to deny Case's bene-

fits was not reasoned and was not supported by the evidence. It is clear that Continental put its own financial interests above its fiduciary duty to Mr. Case.

## IV. CONCLUSION

Continental abused its discretion in denying Mr. Case benefits. First, the language of the plan does not place a burden on Mr. Case to supply Continental with "enough" information, but to supply the required items that prove disability, which Case did provide. Second, the materials relied upon, or the parts of materials relied upon, by Continental were taken out of context to fit Defendant's goal of not paying Case's benefits. When viewing the physicians' reports cumulatively, in addition to the other information supplied, there was more than ample evidence to support an award of benefits. Third, Continental's decision to deny benefits was not the result of a reasoned and principled decision making process, because Continental selectively relied upon bits and pieces of information that supported a decision to deny benefits, rather than reading the physicians' accounts in a reasonable manner, which clearly supports a diagnosis of Case's disability. Moreover, Case provided sufficient objective evidence from two physicians that he was totally disabled in the form of Dr. Weiner's and Dr. Horowitz's reports and subsequent letters. Therefore, the Court holds that Mr. Case is entitled to recover the long term disability benefits from Continental Casualty Company, and his motion for judgment based upon the administrative record is granted. For the foregoing reasons, it is hereby

ORDERED that Plaintiff Frank H. Case, III's, Motion for Judgment Based on the Administrative Record is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.

## *JUDGMENT*

THIS MATTER is before the Court on Plaintiff Frank H. Case, III's, motion for judgment based on the administrative record. In its previous Memorandum Order of February 19, 2003, the Court granted Plaintiff's motion. From the foregoing, it is hereby

ORDERED that Judgment is ENTERED in favor of Frank H. Case, III, and against Continental Casualty Company. It is further

ORDERED that Continental Casualty Company pay Frank H. Case, III, long term disability benefits pursuant to his long term disability policy.

The Clerk is DIRECTED to ENTER JUDGMENT pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk is directed to forward a copy of this Order to counsel.