**Eva E. O'CONNOR; Larry M. O'Connor, Plaintiffs–Appellees,**

**v.**

**CENTRAL VIRGINIA U.F.C.W. and Subscribing Employers Welfare Fund, Defendant–Appellant.**

No. 90–2170.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1991.

Decided Sept. 30, 1991.

Randall Alan Constantine, Elrod & Thompson, Atlanta, Ga., argued (Ray W. King, Tavss, Fletcher & Earley, P.C., Norfolk, Va., on brief), for defendant-appellant.

Daniel Lee Mitchell, Robert A. Blount & Associates, Newport News, Va., argued (Robert A. Blount, on brief), for plaintiffs-appellees.

Before PHILLIPS, WILKINSON and HAMILTON, Circuit Judges.

OPINION

WILKINSON, Circuit Judge:

We address here a question of some importance for the administration of employee health benefit funds. The case arises out of the denial of plaintiffs' claim for in-home custodial care benefits by the trustees of defendant Central Virginia Fund under its ERISA employee welfare benefit plan. The district court ordered the Central Virginia Fund to provide "in-home nursing care" for plaintiff Eva Elaine O'Connor at a level "commensurate with her immediate medical needs." The questions raised by the parties with respect to this order require that we remand the case.

### I.

Eva O'Connor's husband Larry O'Connor, also a plaintiff, is an employee of Super Fresh, Inc. and a participant in the

benefit plan of the defendant Central Virginia Fund. Eva O'Connor is a beneficiary of the Plan. The Plan and the Fund are governed by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1001 *et seq.* The Fund exists pursuant to collective bargaining agreements between Super Fresh, Inc. and its employees. It is administered by a Board of Trustees which consists of two management and two union representatives.

In January 1984, Eva O'Connor suffered a debilitating stroke resulting in paralysis of the right side of her body and severely affecting her speech. In 1985, she suffered a grand mal seizure. Mrs. O'Connor wears a brace on her right leg and knee and a supporting sling on her right arm and requires daily doses of medications to control her seizure activity and high blood pressure. In addition, she is generally confined to bed or a wheelchair and cannot dress, eat or attend the bathroom without assistance.

As a result of her condition, Mrs. O'Connor needs 24–hour care. After some training, Mrs. O'Connor's family was able to care for her themselves following the stroke until 1985 when she suffered the seizure. From October 1, 1985 until June 1987, a registered graduate nurse cared for Eva O'Connor for eight hours a day, four days a week. The Central Virginia Fund paid for the nurse's services. At other times, Mrs. O'Connor's family continued to care for her.

After June 1987, Mrs. O'Connor was cared for by a home health aide under the supervision of a registered nurse. The change from a nurse to a home health aide came at the initiative of the Central Virginia Fund. Because the Fund does not retain a medical staff to evaluate claims, it contracts for those services with United Healthcare, Inc. ("CARE"), described as "an independent, non-profit organization established to carry out studies of health care needs of individuals" and to make recommendations with respect to their care and treatment. (Fact. Stipulation 11). In January 1987, the Fund requested that CARE reevaluate Eva O'Connor's case. In March 1987, CARE recommended that a home health aide working under the supervision of a registered nurse could care for Mrs. O'Connor.

The Fund paid for the home health care aide for approximately eighteen months even though the services of the aide were allegedly not an allowable expenditure under the Plan. In a May 21, 1987 letter to CARE, the Fund explained:

[t]his plan does not normally pay for any custodial care and home health care generally is limited to services performed by "trained nurses." But as the home health aide will assist with range of motion exercises and other limited *medical* treatment on a daily basis and due to the decision by the Board of Trustees to make exceptions in the Plan based on your recommendation, we could continue to reimburse this family for these services utilizing their Major Medical benefit. (emphasis in original).

A series of evaluations followed the change from a nurse to a home health aide. Both Mrs. O'Connor's family physician and surgeon recommended that she have an attendant or companion at home. In March 1988, Mrs. O'Connor was assessed, under CARE's instructions, by Upjohn Healthcare Services, which concluded that keeping Mrs. O'Connor at home with a home health aide and providing periodic supervision by a registered nurse was preferable to moving her to a nursing home.

In June 1988, the Claims Committee of the Central Virginia Fund again reviewed the claims of Eva O'Connor. The trustees solicited medical advice from CARE, which advised that Mrs. O'Connor's physical and emotional state required that she not be left alone. Dr. Lynette Green–Mack, who evaluated Mrs. O'Connor for CARE, concluded that she needed a companion to stay with her during the day when her husband was unavailable. CARE also advised that the care of a companion in the O'Connor case was considered custodial in nature. On December 16, 1988, the trustees decided that as of January 1, 1989, benefits for a home health care aide would no longer be provided because such purely custodial

charges were not covered pursuant to the terms of the Plan. The trustees, however, did offer to fund such nursing or therapy services that Mrs. O'Connor required.

The O'Connors filed suit in state court seeking among other things reimbursement for the expense of hiring an in-home aide and a declaration of benefits. The case was removed and tried before a federal district court which found that the Central Virginia Fund "has unreasonably and arbitrarily and capriciously denied Mrs. O'Connor nursing care benefits under the terms of the Plan or as modified by the managers thereof." The district court ordered the Fund "to provide the O'Connors with in-home nursing care ... at a level commensurate with her immediate medical needs."

From this judgment, the Central Virginia Fund appeals.

## II.

■ Appellant Central Virginia Fund argues that the trustees' determination that the full time care required by Mrs. O'Connor was purely custodial in nature, and thus not a covered benefit, was a reasonable one. We agree that the trustees acted in accord with their discretionary authority in interpreting the Plan to cover medical services but not custodial care and that their conclusion that Mrs. O'Connor does not need full time skilled medical care is a supportable one. However, because we find the district court's order to be ambiguous, we remand for further proceedings consistent with this opinion.

The parties all agree that the trustees have discretionary authority under the trust agreement and that their decision "will not be disturbed if reasonable." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). The trust agreement provides:

> The Trustees, subject to the provisions of Article II and subject to any applicable provisions of the Collective Bargaining Agreement, shall have the absolute discretion to determine who shall be Eligible Employees, the nature, type, character, and amount of benefits to be provided,

and the medium (i.e., self insurance, insurance contract, medical or hospital service contract, maintenance of medical and hospital facilities or otherwise) by which such benefits shall be provided. Amended Agreement and Declaration of Trust, Article V, § 5.1 (effective January 1, 1986). In fact, the trustees have "full authority to determine all questions of any nature, amount, condition and duration of all benefits to be provided based on what in their opinion the fund can reasonably provide after adequate provision for reserves and costs of administration." *Id.* at § 5.8(t).

The relevant Plan provisions limit covered charges to those incurred "for medical care, services and supplies." Central Virginia Retail Clerks and Subscribing Employers Welfare Fund Plan § 3.08(b) (effective July 1, 1982) (hereinafter "1982 Central Virginia Fund Plan"); Central Virginia U.F.C.W. and Subscribing Employers Welfare Fund Plan § 1.3 (effective January 1, 1988) (hereinafter "1988 Central Virginia Fund Plan"). Covered charges specifically include those for nursing or physiotherapy provided by a registered graduate nurse, licensed practical nurse, or a physiotherapist. 1982 Central Virginia Fund § 3.08(b)(6); 1988 Central Virginia Fund § 3.8(b)(6).

The definition of "medical care," therefore, is pivotal. Central Virginia Fund argues that "medical care" does not include custodial care. The district court evidently agreed, finding that the benefit plan of the Central Virginia Fund does not provide for purely custodial care. Although it might, as an ideal matter, be preferable that "medical care" be defined broadly to include all services made necessary by a medical condition, we cannot hold the trustees' view that the Plan covers skilled care provided by nurses and therapists, but not custodial services, to be an unreasonable one. Such an interpretation is a permissible exercise of the trustees' discretionary authority under the Plan.

To give content to the two categories of services, Central Virginia points to CARE guidelines which distinguish "skilled or therapeutic nursing care" from "custodial

care." The CARE guidelines define custodial care as follows:

> Services focus on supporting the patient in activities of daily living (ADL's), observation, supervision and evaluation for regression and complications.

So long as the CARE guidelines do not exclude coverage of necessary medical services, their use as an aide to Plan interpretation is permissible.

There remains, of course, the application of these general principles to Mrs. O'Connor's specific situation. The question is whether Mrs. O'Connor's needs are properly characterized as medical or custodial. While we may be ill-equipped to determine the precise nature of particular services, the basic parameters seem clear. Here, Central Virginia Fund agrees that skilled in-home care provided by a visiting registered nurse, licensed practical nurse or physiotherapist is covered under the Plan and the trustees claim that all such benefits have been and continue to be provided to Mrs. O'Connor. Covered medical expenses apparently include the services of a nurse in monitoring Mrs. O'Connor's blood pressure and seizure activity and the services of a therapist for range of motion exercises or other therapies. There is little dispute, therefore, that Mrs. O'Connor needs at least intermittent skilled medical care which the trustees are plainly obligated to provide.

██ On the other hand, the services of a companion or attendant in helping with activities of daily living (e.g., feeding, clothing, bathing) can legitimately be considered to fall outside of the covered medical charges. Deference must be accorded the determinations of the trustees with respect to the nature and level of care required so long as those determinations are supported by substantial medical evidence rendered by qualified medical personnel. *See Boyd v. Trustees of United Mine Workers Health & Retirement Fund,* 873 F.2d 57, 59–60 (4th Cir.1989) (determination which was supported by substantial evidence "lay within the Trustees' discretion"); *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197,

204 (4th Cir.1984). There is plainly substantial medical evidence to support the trustees' view that the full time care required by Mrs. O'Connor is custodial as defined by the CARE guidelines. However, where "there is a mix of custodial and noncustodial services performed by home care" personnel, "the fiduciary remains obligated to honor those *portions* of claims that represent noncustodial home nursing care and are medically prescribed." *Cathey v. Dow Chemical Co. Medical Care Program,* 907 F.2d 554, 561 (5th Cir.1990).

The Fifth Circuit noted in *Cathey* that the poignant circumstances of a plaintiff's condition did not permit a court to divest trustees of their reserved authority to reasonably interpret a Plan and to administer it with due regard for the welfare of all its participants and beneficiaries. *Id.* at 555. Here too, our human sympathies cannot alone create a special exception to the settled precepts of ERISA law. The order of the district court is unfortunately a vague one which provides insufficient guidance to the parties as to what their obligations of support and their expectations of benefits might be. Both parties have appeared to proceed on the assumption that the Fund is required under the order to pay for all aspects of Mrs. O'Connor's full time care. For the reasons explained above, any such ruling must be modified to provide that the Fund is required to pay those claims, or portions thereof, which represent charges for medical care, services and supplies as opposed to claims, or portions thereof, limited to providing unmixed custodial care. We thus remand the case to the district court for further proceedings in accordance with this decision.*

### III.

For the foregoing reasons, this case is REMANDED WITH DIRECTIONS.

---

\* We see no error in the district court's failure to rule on appellant's motion for sanctions. The motion is, in any event, without merit.