Davis J. PRITT, Individually and Davis J. Pritt, as Administrator of the Estate of Virgie E. Pritt, Plaintiff,

v.

UNITED MINE WORKERS OF AMERICA 1950 BENEFIT PLAN AND TRUST, United Mine Workers of America 1974 Benefit Plan and Trust, Paul R. Dean, Michael H. Holland, Marty D. Hudson, Elliot A. Segal, Trustees, Defendants.

No. 2:93–0473.

United States District Court, S.D. West Virginia, Charleston Division.

March 28, 1994.

anticipation of litigation). Moreover, the Court of Appeals later *vacated* the opinion. 1993 WL 524680 (1993).

H. John Taylor, Rand, WV, for plaintiff.

Margaret M. Topps and Susan Kornetsky, UMWA Health & Retirement Funds, Washington, DC, Mary Jane Pickens and Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

■ Pending are the cross-motions of the parties for summary judgment. Both parties assert there are no issues of material fact in dispute and that they are entitled to judgment as a matter of law.[1]

### I.

The Plaintiff seeks payment of certain medical expenses for skilled nursing care incurred during the course of the treatment of his late wife (the decedent). The decedent was a covered beneficiary under a benefit Plan operated by the Defendants. The decedent came under the care of the Summersville Memorial Hospital Extended Care Unit in May of 1989. Apparently, she remained there through 1993. Although portions of decedent's treatment were covered by Medicare, substantial portions were not. The Plan agreed to cover part of the skilled nursing care not covered by Medicare, but not all of it.[2]

Plaintiff contends the Plan's coverage of some of the skilled nursing care expenses is

---

1. The standard used to determine whether a motion for summary judgment should be granted or denied was recently stated by our Court of Appeals as follows:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at

255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id."* *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994).

2. The Hospital submitted bills to Plaintiff totalling $32,849.60 for the care of Mrs. Pritt. It is unclear what portion of that amount is related to skilled nursing care, and therefore, this issue is disputed.

inconsistent with its denial of benefits for the other portion of skilled nursing care expenses. The Plan argues it granted benefits for skilled nursing care only where such care was medically necessary, and that during the months benefits were denied, the skilled nursing care was not "medically necessary." Plaintiff contends the benefits denied by the Plan for skilled nursing care were identical to benefits approved for skilled nursing care, and that denial of benefits in that situation constitutes an abuse of discretion by the Plan.

## II.

■ The standard of review of a decision made by Trustees of an ERISA benefit plan is ordinarily *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Richards v. United Mine Workers of America Health and Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990); *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989). However, where the Plan gives the Trustees *discretion* to determine benefit eligibility or to construe plan terms, the standard of review is whether the Trustees abused that discretion.[3] *Firestone, supra*, 489 U.S. at 111, 109 S.Ct. at 954, 103 L.Ed.2d at 92–93 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." (citations and internal quotations omitted)). The parties agree that the appropriate standard of review in this case is whether the trustees committed an abuse of their discretion.[4]

The Court of Appeals discussed the criteria used to determine whether an abuse of discretion had been made by Trustees of a benefit plan in *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir.1993):

"In determining whether the trustees of an employment benefits plan abused their discretion in denying benefits,

[w]e must give due consideration, for example, to whether administrators' interpretation is consistent with the goals of the plan; whether it might render some language in the plan meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

The dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own.

*de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989) (internal citations and quotation marks omitted)[.]"

## III.

■ Applying the factors outlined in *Lockhart, supra*, at 78, and *de Nobel, supra*, "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself. If the denial of benefits is contrary to the clear language of

---

**3.** The "abuse of discretion" standard of review may be the same as the pre-*Firestone* "arbitrary and capricious" standard. *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 n. 5 (4th Cir.1993) (noting that the Court of Appeals had utilized the "arbitrary and capricious" standard after *Firestone*, but declining to "resolve the differences, if any, between the two standards.").

**4.** Article IX of the Plan states, in pertinent part: "The Trustees are authorized to and shall make

final resolution of disputes concerning benefits under Employer-provided benefit plans[.]" The Court of Appeals in *Boyd v. Trustees of the United Mine Workers Health and Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989), found substantially similar language to be grounds for utilizing the abuse of discretion standard (the Trustees there had the power to make "full and final determination as to all issues concerning eligibility for benefits.").

the plan, the decision will constitute an abuse of discretion." (citations and internal quotation marks omitted).[5] The plan provisions at issue allow "skilled nursing care provided by or under the supervision of a registered nurse," when such care is "medically necessary," but specifically excludes such care when it constitutes mere "custodial care."[6]

Our Court of Appeals was faced with a similar scenario in *O'Connor v. Central Virginia U.F.C.W.*, 945 F.2d 799, 802 (4th Cir. 1991). The dispute therein arose over whether certain nursing care services were medically necessary or custodial in nature. Although the Plan therein, like the instant Plan, did not define "custodial care," the Court accepted the following definition: "Services focus[ing] on supporting the patient in activities of daily living (ADL's), observation, supervision and evaluation for regression and complications."[7] *See, e.g., Dvorak v. Metropolitan Life Ins. Co.*, 965 F.2d 606, 610 (8th Cir.1992) (accepting definition of "principally custodial care" as, "the attention given to the safety and well-being of the individual that most importantly or consequently consists of protection, care, maintenance, and tuition."); *Barnett v. Weinberger*, 818 F.2d 953, 968 (D.C.Cir.1987) ("[C]ourts almost uniformly have interpreted as descriptive of [custodial care] that which 'can be provided by a lay person without special skills and not requiring or entailing the continued attention of trained or skilled personnel[,]' " interpreting the Medicare statute, Title XVIII of the Social Security Act (42 U.S.C. § 1395–1395ccc) and *quoting Kuebler v. Secretary of United States Dep't of Health & Human Services*, 579 F.Supp. 1436, 1438 (E.D.N.Y.1984) and *citing Hayner v. Weinberger*, 382 F.Supp. 762, 766 (E.D.N.Y.1974)); *Camelot Care Centers, Inc. v. Planters Life-savers Co.*, 836 F.Supp. 545, 549–51 (N.D.Ill.

---

**5.** *See also Vasseur v. Halliburton Co.*, 950 F.2d 1002, 1007 (5th Cir.1992) (starting point for determining beneficiaries' rights under ERISA plan is plan language); *Musto v. American Gen. Corp.*, 861 F.2d 897, 900 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

**6.** Article III A.(5) of the Plan states,
"(5) *Skilled Nursing Care and Extended Care Units*
(a) Skilled Nursing Care Facility
Subject to prior approval by the Trustees and upon determination by the attending physician that confinement in a participating skilled nursing care facility is medically necessary, to the extent that benefits are not available from Medicare or other State or Federal programs, benefits will be provided for:
1. skilled nursing care provided by or under the supervision of a registered nurse;
2. room and board
3. physical, occupational, inhalation and speech therapy, either provided or arranged for by the facility;
4. medical social services;
5. drugs, immunizations, supplies, appliances and equipment ordinarily furnished by the facility for the care and treatment of inpatients;
6. medical services, including services provided by interns or residents in an approved, hospital-run training program, as well as other diagnostic and therapeutic services provided by the hospital;
7. other health services usually provided by skilled nursing care facilities.
The Plan will not pay for services in a nursing care facility:
1. that is not licensed or approved in accordance with state laws or regulations;
2. that does not provide care of a quality judged acceptable by the Trustees;
3. unless the service is provided by or under direct supervision of licensed nursing personnel and under the general direction of a physician in order to achieve medically desired results.
Exclusions:
Telephone, T.V., radio, visitor's meals, private room or private nursing (unless necessary to preserve life), custodial care, services not usually provided in a skilled nursing facility.
(b) *Extended Care Units*
Approval by the Trustees may be given for up to two weeks to provide specialized medical services and daily treatments by licensed personnel in extended care units. If a physician requests an extension to the two-week period of treatments, such extension requires prior approval from the Trustees.
The Plan will not pay for services in an extended care unit unless, in the case of a Medicare patient, such extended care has the prior approval of Medicare.
Exclusions:
1. Services, drugs or other items which are not covered for hospital inpatients;
2. Custodial care.

**7.** This definition was provided by the firm contracted to evaluate medical claims in *O'Connor*. The firm was described as " 'an independent, non-profit organization established to carry out studies of health care needs of individuals' and to make recommendations with respect to their care and treatment." 945 F.2d at 800.

1993); *Adelson v. GTE Corp.*, 790 F.Supp. 1265, 1271 (D.Md.1992) ("[Custodial care] is not defined in the Plan documents and it appears to have a common sense meaning: the providing of assistance by a lay person without special skills in such matters as eating, clothing, washing and toileting." *Citing O'Connor, supra; Coe v. Secretary of Health, Ed., and Welfare*, 502 F.2d 1337 (4th Cir. 1974); *Hirsch v. Bowen*, 655 F.Supp. 342 (S.D.N.Y.1987)); *Erickson v. Aetna Life Ins. Co.*, 777 F.Supp. 1463, 1467 (D.Minn.1991) (accepting definition of custodial care as defined by that plan: "care that is provided primarily to assist the individual in the activities of daily living. * * * Those activities include eating, dressing, grooming, voiding, and moving the extremities to maintain muscle condition.").

The *O'Connor* Court went on to analyze the dispute therein as follows:

"The question is whether Mrs. O'Connor's needs are properly characterized as medical or custodial. While we may be ill-equipped to determine the precise nature of particular services, the basic parameters seem clear. * * * Covered medical services apparently include the services of a nurse in monitoring Mrs. O'Connor's blood pressure and seizure activity[.] There is little dispute ... that Mrs. O'Connor needs at least intermittent skilled medical care which the trustees are plainly obligated to provide.

"On the other hand the services of a companion or attendant in helping with activities of daily living (e.g., feeding, clothing, bathing) can legitimately be considered to fall outside the covered medical charges. Deference must be accorded the determinations of the trustees with respect to the nature and level of care required so long as those determinations are supported by substantial medical evidence rendered by qualified medical personnel. *See Boyd v. Trustees of United Mine Workers*

*Health & Retirement Fund*, 873 F.2d 57, 59–60 (4th Cir.1989) (determination which was supported by substantial evidence 'lay within the trustees discretion'); *Lefebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 204 (4th Cir.1984).... [W]here 'there is a mix of custodial and noncustodial services performed by home care' personnel, 'the fiduciary remains obligated to honor those *portions* of claims that represent noncustodial home nursing care and are medically prescribed.' *Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 561 (5th Cir.1990)." 945 F.2d at 802. (emphasis in original).

In this case the decedent's treating physician made monthly reports to the Plan in which she asserted the decedent required "skilled nursing care" for a variety of reasons. The treating physician stated, "[decedent] requires skilled nursing care due to daily G-tube feedings to maintain adequate fluid and daily nutritional levels. [Her] diabetes requires close monitoring." Defendant's exhibit A at 307.[8] The treating physician also made the following observation in a letter dated August 8, 1991:

"Basically *Mrs. Pritt requires total care.* She has a gastrostomy feeding tube which is checked on a daily basis as well as changed by the registered nurse or myself every thirty days. In the past Mrs. Pritt has had some trouble with her tube wanting to pull into her abdomen and at times has even required the surgeon to come adjust the tube. Also she has difficulty with changing the tube at times requiring either myself or the surgeon to replace the tube.

"As far as monitoring, the patient has blood sugars every week as well as electrolytes every three months, although currently the patient is requiring them weekly as her potassium has been low as well as her sodium. Her thyroid is checked every six months.

8. The quote in the text is taken from the treating physician's information update letter sent to the Plan dated September 30, 1991. Substantially similar assertions are found in letters dated July 25, 1990 (Defendant's exhibit A at 155); August 22, 1990 (*Id.* at 165); September 26, 1990 (*Id.* at 172); October 25, 1990 (*Id.* at 180); November 28, 1990 (*Id.* at 187); December 19, 1990 (*Id.* at 198); January 23, 1991 (*Id.* at 206); February 27, 1991 (*Id.* at 214); March 28, 1991 (*Id.* at 222); April 24, 1991 (*Id.* at 229); May 29, 1991 (*Id.* at 248); June 25, 1991 (*Id.* at 260); July 29, 1991 (*Id.* at 276); August 26, 1991 (*Id.* at 291); September 30, 1991 (*Id.* at 308).

"The patient does wear a leg brace and appliances for hand contracture, and this needs to be checked very frequently to assure that no skin break down occurs due to these appliances. I see the patient on a monthly basis unless she has a problem. Due to her condition she does require monitoring as stated above and this is done by myself as well as the registered nurse. The licensed practical nurses and aides do take care of her quite a bit and can check her skin, but *as far as the gastrostomy tube is concerned, it requires an RN or an MD's attention.*" Defendant's exhibit A at 30. (emphasis added).

Later, on October 10, 1991, the treating physician observed that the decedent no longer required daily gastrostomy tube feedings. However, she stated that prior to ending such feedings, a nurse was required to monitor those feedings closely to ensure that no residual amount of fluid built up within her stomach. Defendant's exhibit A at 22.

Unlike the reports submitted to the Plan by the treating physician, the letters denying benefits to the decedent were not signed by a doctor, but were signed by a registered nurse. No reasons were given for the denial of benefits beyond the following: "Based upon our review, we have determined that these services do not satisfy the FUNDS' definition of skilled nursing services." No-

where in the record of this case does the Defendant reveal its definition of "skilled nursing care"[9] or "custodial care."[10] Nor does Defendant present substantial medical evidence or analysis contradicting or disputing the assertions of decedent's treating physician.

In *Barnett v. Weinberger, supra,* 818 F.2d at 969, the Court of Appeals for the District of Columbia opined that simply because a portion of the care received by a patient is routine does not render the treatment custodial:

"To suggest that a victim of a catastrophic illness or a severe accident is receiving 'custodial care' simply because the 'primary' portion of her attendants' time is spent providing her elemental needs is patently misguided. The critical factor is not the division or percentage of the labor daily received by the patient but the essential nature of the patient's call for supervision and ministration, even if considerably less frequent, from medical professionals."

Although some portion of the decedent's care may be termed "custodial," the treating physician repeatedly stressed the need for skilled nursing care performed by either a registered nurse or medical doctor, especially in regard to the daily gastrostomy tube feedings required by the decedent. The Defen-

---

9. The Defendants submit their opinion in the resolution of a different case to support their denial of benefits in this case. Defendant's exhibit C. Therein the following discussion reveals the Plan's position in that case regarding allowable "skilled nursing care" claims as opposed to custodial care:

"Confinement in a skilled nursing care facility is appropriate if it is necessary for the patient to receive skilled services on essentially a daily basis, and if, from a practical standpoint, the services can only be provided during an inpatient stay at a skilled nursing care facility as opposed to an alternative location. Skilled nursing care is generally considered to encompass those services that are reasonable and necessary for the treatment of an illness or injury and that must be performed by or under the direct supervision of specially qualified personnel, such as licensed nurse or physical therapist, if the safety of the patient is to be assured and the medically desired result is to be achieved." Defendant's exhibit C at 3.

Even under this definition of skilled nursing care the decedent's care would be covered. The only

substantial medical evidence, provided by the treating physician, opined that decedent's condition required direct supervision by qualified medical personnel. Defendants have not submitted substantial medical evidence to the contrary.

10. At least one court has concluded that the failure to define "custodial care" within the terms of an ERISA plan may constitute a violation of ERISA disclosure requirements. *Dvorak v. Metropolitan Life Ins. Co., supra,* 965 F.2d at 609 ("[Plaintiff] argues that the Plan's failure to define the term custodial care is a per se violation of ERISA disclosure requirements. ERISA requires that the Plan description and Summary Plan Description contain information of, 'the plan's requirements respecting eligibility for participation and benefits ... [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.' 29 U.S.C. § 1022(b) (1988). * * * We are troubled with the Plan's failure to define custodial care and, indeed, this may violate ERISA.") The Plaintiff does not argue that the failure of the Plan to define "custodial care" violates ERISA.

dants have presented no medical evidence contradicting the treating physician's assertions.

This Court is of the opinion that the summary denial of benefits by the Plan constituted an abuse of discretion. Defendants contend that because nurses reviewed and signed the letters denying benefits that such a denial is inherently reasonable. However, the nurses gave no reason for their denial of benefits. The decedent's treating physician, on the other hand, continually documented the decedent's need for skilled nursing care. She noted that the gastrostomy tube feedings, occurring several times a day, required the attention of either a registered nurse or medical doctor. The decedent also required close monitoring of her condition in many other areas, including her diabetes, thyroid, and her braces. The combination of the decedent's medical problems requiring regular attention by skilled medical personnel weighs heavily against a finding that the denial of benefits for skilled nursing care was reasonable. *Compare Novak v. TRW, Inc.,* 822 F.Supp. 963, 971 (E.D.N.Y.1993) (under facts closely resembling those in this case, the court held the treatment of the patient was not custodial care; however, Plan's denial of benefits upheld because Plan also prohibited benefits for "maintenance care" which included type of care in that case); *Deville Nursing Service, Inc. v. Metropolitan Life Ins. Co.,* 789 F.Supp. 213 (W.D.La.1992); *Erickson v. Aetna Life Ins. Co., supra,* 777 F.Supp. at 1467 (custodial care is where *none* of patient's "daily care is so medically intensive that a registered nurse must perform it.");

This Court recognizes the deference that must be given to the interpretation of Plan provisions by trustees of a Plan when those trustees have discretion to determine eligibility for benefits. The interpretation of the Plan must only be reasonable to pass muster. However, that deference does not mean this Court should "rubber stamp" all decisions of trustees regarding the eligibility for benefits.

One court in this Circuit has admonished others to be on guard against mere "rubber stamping" the decisions of trustees. The district court in *Adelson v. GTE Corp., supra* 790 F.Supp. at 1274 stated:

"Because ERISA cases frequently touch our human sympathies, courts of appeals have cautioned judges to take care, for the general good of the community, that hard cases do not make bad law. That admonition is not inappropriate. However, it is also true that occasionally 'bad law' makes 'hard cases.' The rules which have evolved concerning the standard of review of the decisions of ERISA fiduciaries are not themselves 'bad law.' However, if courts blindly apply these rules to rubber stamp all decisions made by administrators of ERISA plans, forgetting that those decisions are entitled to deference precisely because of the serious duties imposed upon the plan administrators as fiduciaries, 'bad law' will have developed in practice." (citations and internal quotation marks omitted).

As a matter of law, this Court concludes the denial of benefits for skilled nursing care in this case cannot withstand scrutiny and must be overturned.

Defendants have not made a reasonable interpretation of the Plan provisions. As our Court of Appeals stated in *O'Connor, supra,* "Deference must be accorded the determinations of the trustees with respect to the nature and level of care required *so long as those determinations are supported by substantial medical evidence rendered by qualified medical personnel.*" 945 F.2d at 803. (emphasis added). The Defendants are unable to point to any "substantial medical evidence" supporting the denial of benefits. In fact, the only substantial medical evidence supports the opposite conclusion. In such circumstances, the Defendants' denial of benefits for skilled nursing care was unreasonable, and constitutes an abuse of their discretion.

## IV.

One issue of material fact remains unresolved. The parties disagree on the amount payable for the skilled nursing care of the decedent. The record is inconclusive in this regard. Defendants request that, "this Court allow the parties additional time

to examine available documentation and submit a proposed order reflecting the accurate value of the unpaid claim(s)[.]" This Court agrees. The parties shall have thirty days from the entry of this Order to submit such a proposed order.

## V.

With the foregoing in mind, this Court concludes the Defendants' denial of benefits was unreasonable, and an abuse of their discretion. Defendants' motion for summary judgment is therefore **DENIED.** Because this Court concludes the Defendant's denial of benefits was unreasonable, Plaintiff's motion for summary judgment is hereby **GRANTED** as to liability. The parties are hereby **ORDERED** to submit a proposed order reflecting the value of the unpaid claims to this Court within thirty days of the entry of this Order.