Wilbert MARCUM, Plaintiff,

v.

ZIMMER, et al., Defendants.

Civ. A. No. 1:94–0246.

United States District Court,
S.D. West Virginia,
Bluefield Division.

June 7, 1995.

Juliet Walker Rundle, Pineville, WV, for plaintiff.

Kevin A. Nelson, Kay, Casto, Chaney, Love & Wise, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the defendants' motions to dismiss and for summary judgment. Plaintiff has responded only to the motion for summary judgment, and defendants have replied. These matters are ripe for adjudication.

### I.

Mr. Marcum filed this action against 1) his former employer, Zimmer, Inc. ("Zimmer"), 2) Thomas L. Jacobs & Associates, Inc., a claims administrator for his ERISA[1] benefit plan, and 3) Bristol–Myers Squibb Company, the employer of his ERISA benefit plan administrator. Plaintiff was a participant in the Bristol–Myers Squibb Company Long Term Disability Income Plan (the "Plan") and he asserts the defendants wrongfully denied him disability benefits due him under the Plan. Plaintiff did not sue the Plan or the Plan administrator.

Mr. Marcum was injured in a non-work related automobile accident on September 12, 1990. Initially he was granted six months of disability payments under the related Bristol–Myers Squibb Short Term Disability Plan. He then was granted an initial six months of benefits under the Plan. Plaintiff received benefits under the Plan because the Plan determined he was totally disabled. Chronologically, the Plan includes two definitions of totally disabled. To qualify for benefits for the first year-long period (the first six months of benefits were made under the Short Term Plan and the Second six months of benefits were made under the instant

---

1. The Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq.

Long Term Plan), a claimant need show he "is unable to perform each and every duty pertaining to his own occupation or any other job that the Company offers him and is not engaged in any other occupation[.]" Defendants' Exhibit 2A at 5. There is no dispute Plaintiff met this criteria and was paid benefits for the initial year-long period.

At the expiration of the first year of benefits, the Plan heightens the criteria for one to qualify for continuation of "totally disabled" benefits. To qualify, a Plan participant must show he "is unable to engage in any occupation for which he is qualified by education, training or experience." Defendants' Exhibit 2A at 5–6. The qualification standard for benefits thus changed from proof of an inability to perform the employee's most recent job, to proof of an inability to perform any job for which the employee is qualified.

Plaintiff sought to qualify for an extension of benefits under the higher standard by submitting medical evidence from Dr. Vadak Ranganathan, his treating neurologist. Dr. Ranganathan submitted medical reports reflecting his analysis of Plaintiff's condition. In response to specific written questions from an agent of the Plan Administrator, Dr. Ranganathan outlined the Plaintiff's "current restrictions/limitations" as of July 22, 1991, stating "because of headaches and dizziness patient cannot perform active work including any movement or exertion for over 15 min., as he gets dizzy." Defendants' Memorandum in Support of Motion for Summary Judgment, Exhibit 3. Dr. Ranganathan also opined Plaintiff's "prognosis for return to work" was "poor" but "would try vocational rehabilitation for a desk job." *Id.* Neither the Plan Administrator nor his agents requested Dr. Ranganathan express an opinion regarding Plaintiff's ability to perform "any occupation for which he is qualified by education, training or experience." However, in response to a later question regarding when Plaintiff would be released to work, Dr. Ranganathan opined Plaintiff "can try restricted duty[;] I am very pessimistic that patient will tolerate and work." *Id.*

By letter dated September 5, 1991, an agent of the Plan administrator informed Mr. Marcum his request for an extension of total disability benefits had been denied because he did not meet the heightened total disability standard. The letter found Dr. Ranganathan's opinion "could not be supported by his objective findings." Plaintiff's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 2 at 2. The letter informed Plaintiff he had a right to appeal the denial within sixty days. *Id.* Plaintiff exercised his appeal prerogative and submitted further medical reports.

By letter dated February 11, 1992, Aldon D. Daniels, the Manager of Health and Disability Programs for defendant Bristol–Myers Squibb Company, and the person designated to resolve Plaintiff's appeal of the benefits denial, informed Plaintiff his appeal was denied. Mr. Daniels noted Plaintiff's appeal had been reviewed by both him and Dr. E.R. Blonsky, the Medical Director of an agent of the Plan Administrator, defendant T.L. Jacobs & Associates, Inc. Mr. Daniels denied Plaintiff's appeal because, "the objective medical evidence available does not support or verify an impairment of such severity as to render [Plaintiff] disabled within the meaning of the Plan." Defendants' Memorandum in Support of Motion for Summary Judgment, Exhibit 4 at 3. The letter addressed the findings of Drs. Ranganathan and Paflas as follows:

"Dr. Vadak Ranganathan stated that your prognosis for return to work is poor. However, Dr. Ranganathan was unable to provide specific work restrictions and/or limitations which could be supported by objective medical information. Medical information received from Dr. Paflas did show findings of vertigo, but again there was no indication that this was a severe condition which would be disabling." *Id.* at 2.

After his appeal was denied, Plaintiff initiated this civil action.

## II.

Defendants assert they are not proper party defendants in this action. Defendant Zimmer was Plaintiff's employer. Defendant T.L. Jacobs & Associates, Inc. was apparently designated by the Plan administrator to initially adjudicate Plaintiff's request for total

disability benefits. Defendant Bristol–Myers Squibb Company employs both the Plan Administrator, E. Lynn Daniels, who is also its Senior Vice President of Human Resources, and the person designated by E.L. Daniels to adjudicate Plaintiff's appeal of his denial of benefits, Aldon D. Daniels, who is its Manager of Health and Disability Programs. Defendants assert only the Plan administrator or the Plan itself may properly be named as defendants in an action alleging wrongful denial of benefits under ERISA.

■ It is clear one of the defendants was wrongfully named. An employer may not be named a defendant in an ERISA action unless the plaintiff shows the employer controlled or influenced the administration of the plan. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), *citing, Boyer v. J.A. Majors Co. Emp. Profit Sharing Plan*, 481 F.Supp. 454, 457–58 (N.D.Ga. 1979) and *Foulke v. Bethlehem 1980 Salaried Pension Plan*, 565 F.Supp. 882 (E.D.Pa. 1983); *Rossi v. Boston Gas Co.*, 833 F.Supp. 62, 67 (D.Mass.1993); *Green v. Eastern Airlines*, 138 F.R.D. 146, 147 (M.D.Fla.1991); *In re Robertson*, 115 B.R. 613, 621 n. 6 (Bankr. N.D.Ill.1990); *Adamo v. Anchor Hocking Corp.*, 720 F.Supp. 491, 498 (W.D.Pa.1989); *Reynolds v. Bethlehem Steel Corp.*, 619 F.Supp. 919, 928 (D.Md.1984). Here, Plaintiff has not shown the employer, Zimmer controlled or influenced the administration of the Plan in any way.[2] Zimmer's motions to dismiss and for summary judgment are **GRANTED.**

■ On the other hand, both Defendants T.L. Jacobs & Associates, Inc., and Bristol–Myers Squibb Company appear to have substantial ties to the administration of the Plan. *See Yeseta v. Baima*, 837 F.2d 380, 383 (9th Cir.1988). T.L. Jacobs & Associates, Inc. was delegated authority to adjudicate Plaintiff's claim for total disability benefits. Its medical director, Dr. Blonsky served as an advisor to the Plan in the adjudication of the denial of benefits. A Bristol–Myers Squibb Company executive, Mr. E.L. Daniels is designated as the Plan Administrator by virtue of his position with the company; a second executive, Mr. A.D. Daniels was delegated responsibility by the Plan Administrator to adjudicate Plaintiff's appeal of his denial of benefits. It thus appears both T.L. Jacobs & Associates, Inc., and the Bristol–Myers Squibb Company exercised sufficient control over the administration of the Plan to be proper party defendants in this lawsuit. The remaining Defendants' motions to dismiss and for summary judgment on that basis are **DENIED.**

### III.

■ This Court addressed the standard of review of a denial of benefits by an ERISA Plan in *Pritt v. United Mine Workers of America 1950 Benefit Plan and Trust*, 847 F.Supp. 427, 429 (S.D.W.Va.1994) (Haden, C.J.):

> "The standard of review of a decision made by Trustees of an ERISA benefit plan is ordinarily *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Richards v. United Mine Workers of America Health and Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990); *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989). However, where the Plan gives the Trustees *discretion* to determine benefit eligibility or to construe plan terms, the standard of review is whether the Trustees abused that discretion.[3] *Firestone, supra*, 489 U.S. at 111, 109 S.Ct. at 954, 103 L.Ed.2d at [92–93] ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." (citations and inter-

---

**2.** Zimmer, Inc., is, however, a subsidiary of co-defendant Bristol–Myers Squibb Company. De-

fendant's Memorandum in Support of Motion for Summary Judgment, Exhibit 3.

nal quotations omitted)).'' (emphasis in original).

3. The "abuse of discretion" standard of review may be the same as the pre-*Firestone* "arbitrary and capricious" standard. *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 n. 5 (4th Cir.1993) (noting that the Court of Appeals had utilized the "arbitrary and capricious" standard after *Firestone*, but declining to "resolve the differences, if any, between the two standards."). *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 n. 4 (4th Cir.1994).

Where the plan administrator does not have discretion to determine benefit eligibility, however, such decisions are reviewed *de novo*.

■ In the case at bar the Defendants contend the Plan grants the Plan administrator discretion to determine Plaintiff's eligibility for benefits. Plaintiff does not contest the Defendants' assertions. The Plan gives the Plan administrator responsibility to determine who meets the definition of "totally disabled" and the power "to interpret the provisions of the Plan and to resolve ambiguities, inconsistencies and omissions therein[.]" Defendants' Memorandum in Support of Motion for Summary Judgment, Exhibit 3. Clearly then the Plan Administrator has discretion to determine who meets the criteria for totally disabled status under the Plan. The Plan administrator's decisions are thus reviewed for an abuse of discretion. *See, e.g., Steever v. Bristol–Myers Co.*, 727 F.Supp. 986, 989 (D.Md.1989).

## IV.

■ In *Pritt, supra*, the Court addressed what constitutes an abuse of discretion in the ERISA context:

"The Court of Appeals discussed the criteria used to determine whether an abuse of discretion had been made by Trustees of a benefit plan in *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir. 1993): "In determining whether the trust-

3. Where a fiduciary of an ERISA plan has discretion to determine benefit eligibility under the plan, the abuse of discretion standard of review may be heightened if the fiduciary is operating under a conflict of interest. *Hickey v. Digital Equipment Corp.*, 43 F.3d at 946, *citing, Doe*, 3 F.3d at 87.

ees of an employment benefits plan abused their discretion in denying benefits,

[w]e must give due consideration, for example, to whether administrators' interpretation is consistent with the goals of the plan; whether it might render some language in the plan meaningless or internally inconsistent; whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; whether the provisions at issue have been applied consistently; and of course whether the fiduciaries' interpretation is contrary to the clear language of the plan.

The dispositive principle remains, however, that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own.

*de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989) (internal citations and quotation marks omitted)[.]'' (footnote omitted)." *Id.* at 429.

*See also, Hickey v. Digital Equipment Corp.*, 43 F.3d 941, 945 (4th Cir.1995) ("When a fiduciary is given discretionary powers to determine eligibility for benefits and to construe the language of an ERISA plan, the fiduciary's decision is entitled to deferential review. Thus, where a fiduciary with authorized discretion construes a disputed or doubtful term, we will not disturb the interpretation if it is reasonable, even if we come to a different conclusion independently." (citations and internal quotation marks omitted)); *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir.1994) ("[T]he district court should not disturb a benefits determination by a trustee authorized to exercise its discretion unless the decision was unreasonable."); *Aliff v. BP America, Inc.*, 26 F.3d 486, 489 (4th Cir. 1994); *Doe v. Group Hospitalization & Medical Servs.*, 3 F.3d 80 (4th Cir.1993).[3]

The Plan Administrator herein is an employee of the company establishing and purchasing insurance to fund the Plan, defendant Bristol–Myers Squibb Company. The Plaintiff has not asserted the Plan Administrator operated under a

■ Applying the factors outlined in *Lockhart, supra* at 78, and *de Nobel, supra,* "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself. If the denial of benefits is contrary to the clear language of the plan, the decision will constitute an abuse of discretion." (citations and internal quotation marks omitted).[4] As noted above, the Plan defines total disability as when one "is unable to engage in any occupation for which he is qualified by education, training or experience."

■ Plaintiff argues the Plan administrator abused his discretion in denying the claim for total disability benefits. He brings forth no specific evidence to support this contention, but rather generally contends an abuse of discretion can be determined only by a jury. Plaintiff's premise is incorrect. Defendants have put forth evidence they did not abuse their discretion in rejecting his claim. The burden thus shifts to the Plaintiff to bring forth evidence to support his contention; he must demonstrate that a triable issue of fact remains. He may not rest on mere denials or allegations. The pleadings must show evidence on which the finder of fact could reasonably find for the party opposing judgment.[5] The Plaintiff must demonstrate the unreasonableness of the rejection of his claim. *See Saah v. Contel Corp.,* 780 F.Supp. 311, 315 (D.Md.1991), *aff'd,* 978 F.2d 1256, 1992 WL 310225 (4th Cir.1992) (Table) ("At trial, the plaintiff would have the burden of proving an abuse of discretion"); *Questech, Inc. v. Hartford Acc. and Indem. Co.,* 713 F.Supp. 956, 964 n. 20 (E.D.Va.1989), *citing, Maggard v. O'Connell,* 703 F.2d 1284 (D.C.Cir.1983) and *Carr v. Trustees of Hotel & Restaurant Employees and Bartenders Int'l Union Pension Fund,* 585 F.Supp. 949 (D.C.Pa.1984). Although Plaintiff has comprehensively reviewed the medical evidence of record [6], he has made no effort to show

conflict of interest; thus the Court does not need to address that issue.

**4.** *See also Vasseur v. Halliburton Co.,* 950 F.2d 1002, 1007 (5th Cir.1992) (starting point for determining beneficiaries' rights under ERISA plan is plan language); *Musto v. American Gen. Corp.,* 861 F.2d 897, 900 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

**5.** The standard used to determine whether a motion for summary judgment should be granted or denied was stated by our Court of Appeals as follows:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255 [106 S.Ct. at 2513–14]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* [498 U.S. 1109], 111 S.Ct. 1018 [112 L.Ed.2d 1100] (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265] (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]. A mere scintilla of evidence supporting the case is insufficient. *Id.*" *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). *Accord, Browning v. Snead,* 886 F.Supp. 547, 551 (S.D.W.Va.1995) (Haden, C.J.).

**6.** Plaintiff has also sought to introduce certain evidence into the record not before the Plan Administrator when the denial decisions were made, including the decision of the Social Security Administration dated April 19, 1994 (issued over two years after the Plan Administrator's denial of benefits) granting Plaintiff disability benefits. When reviewing a determination by a Plan Administrator upon an abuse of discretion standard, an assessment of the reasonableness *vel non* of the decision must be made based only upon the facts known to the Plan Administrator at the time the decision was made. *Sheppard & Enoch Pratt Hosp.,* 32 F.3d at 125; *Voliva v. Seafarers Pension Plan,* 858 F.2d 195, 196 (4th Cir.1988). The Court will not consider the documents not submitted in the initial claim and appeal.

how that evidence supports his contention that the denial of his claim for total disability benefits was unreasonable.

When determining whether the Plan administrator's decision was reasonable, this Court is mindful of the admonition of Judge Motz of the District of Maryland in *Adelson v. GTE Corp.*, 790 F.Supp. 1265, 1274 (D.Md. 1992) to be on guard against mere "rubber stamping" the decisions of ERISA plan fiduciaries:

> "Because ERISA cases frequently touch our human sympathies, courts of appeals have cautioned judges to take care, for the general good of the community, that hard cases do not make bad law. That admonition is not inappropriate. However, it is also true that occasionally 'bad law' makes 'hard cases.' The rules which have evolved concerning the standard of review of the decisions of ERISA fiduciaries are not themselves 'bad law.' However, if courts blindly apply these rules to rubber stamp all decisions made by administrators of ERISA plans, forgetting that those decisions are entitled to deference precisely because of the serious duties imposed upon the plan administrators as fiduciaries, 'bad law' will have developed in practice." (citations and internal quotation marks omitted).

*Accord, Pritt,* 847 F.Supp. at 433.

Although the decision to reject Plaintiff's claim may not have been the decision this judge would reach were he reviewing the claim *de novo,* the Court cannot say Defendants abused their discretion. The decision-maker consulted with Dr. Blonsky who, although he did not physically examine the Plaintiff, reviewed the medical evidence and opined there was no objective medical evidence to support Plaintiff's contention he was totally disabled. Where an ERISA benefit eligibility determination is supported by substantial medical evidence rendered by qualified medical personnel, the determination must be given deference. *Pritt,* 847 F.Supp. at 431, *citing, O'Connor v. Central Virginia U.F.C.W.,* 945 F.2d 799, 802 (4th Cir.1991); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59–60 (4th Cir.1989). The Court concludes the rejection decision was supported by substantial medical evidence rendered by qualified medical personnel, and must be given deference.

As such, Defendants did not abuse their discretion in denying Plaintiff's claim for total disability benefits, and their motion for summary judgment is **GRANTED.**

### V.

Based upon the foregoing, Zimmer's motions to dismiss and for summary judgment are **GRANTED;** the motion for summary judgment filed on behalf of T.L. Jacobs and Associates, Inc., and Bristol–Myers Squibb Company is also **GRANTED.** Accordingly, this case is **ORDERED DISMISSED** and stricken from the docket of the Court.